UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
BERTHONY CADET, JR.,

                  Plaintiff,

      -against-                          **MEMORANDUM AND ORDER**

NEW YORK CITY POLICE DEPARTMENT,             05-CV-3384 (CBA)
71ST PRECINCT, 61ST PRECINCT, 75TH PRECINCT,
1ST PRECINCT, NEW YORK CITY CORRECTIONS
DEPT., KINGS COUNTY CENTRAL BOOKING
FACILITY, LEGAL-AID SOCIETY OF N.Y.,
BROOKLYN OFFICE OF DISTRICT ATTORNEY,
KINGS COUNTY FAMILY COURT,
KINGS COUNTY CRIMINAL COURT,
AIYSHA MCKAIN-CADET, HONORABLE
JUDGE MCGUIRE OF NYC CRIMINAL COURT,
HONORABLE JUDGE DEBRA SILBER OF
NYC FAMILY COURT, DET. PETE MCGRATH
OF 71ST PRECINCT, NEISS MANAGEMENT REALTY,

                  Defendants.
------------------------------------------------------------------------x
AMON, J.:

      The Legal Aid Society ("LAS") – one of at least 16 defendants named in this complaint – removed this action from the Supreme Court of the State of New York, Kings County, to this Court pursuant to 28 U.S.C. § 1441.[1] However, in light of recent submissions discussed below, it appears that this Court lacks subject matter jurisdiction over this action. Accordingly, this action is hereby remanded to State court pursuant to 28 U.S.C. § 1447(c).

---

    [1]Although the Notice of Removal was filed on behalf of both The Legal Aid Society and its attorney, Gary Cohen, Esq., only The Legal Aid Society is a named defendant in this action. The body of the complaint alleges that Cohen "performed misrepresentation, conspiracy to frame," Complaint at 5, but Cohen is not listed as a defendant in the caption of plaintiff's State court complaint or in the list of defendants which appears in the summons and complaint served on LAS. Since only a defendant can remove a case to federal court, this Court hereinafter refers to the Notice of Removal as having been filed solely by The Legal Aid Society.

Background

On June 16, 2004, plaintiff, Berthony Cadet, Jr., was involved in a violent domestic dispute with his wife, defendant Aiysha Mckain-Cadet. Although plaintiff alleges that he was the only one injured in the fight, his wife apparently obtained an order of protection against him and succeeded in locking him out of the family home. When plaintiff summoned the police in an effort to gain entry, officers from defendant 71st precinct informed plaintiff that his wife had an order of protection and threatened to arrest him if he entered the apartment.

Both plaintiff and his wife initiated Family Court proceedings. On June 22, 2004, the couple appeared before Family Court Judge Debra Silber, who apparently credited Mckain-Cadet's claims that plaintiff had abused her. Judge Silber extended the order of protection against plaintiff, which effectively rendered plaintiff homeless.

Both plaintiff and his wife also filed criminal charges against one another. On June 23, 2004, while waiting to appear in Family Court for a second time, plaintiff was arrested by detectives from defendant 61st precinct upon Mckain-Cadet's allegations that he had stolen her car. Although plaintiff alleges that he did not have the car keys and that "[t]he vehicle was discovered before [plaintiff] and the detectives left [F]amily [C]ourt," the detectives nonetheless arrested plaintiff. Complaint at 5.

At arraignment, plaintiff was represented by Gary Cohen, Esq., who told plaintiff that he was charged with assault. When plaintiff told Cohen that he had been arrested on grand larceny charges, Cohen allegedly responded by saying, "Well they lied to you[;] now deal with it." Id. at 6. Plaintiff then appeared before Kings County Criminal Court Judge McGuire, who allegedly "forced" him to sign an order of protection. Id.

Just as plaintiff was about to be released on recognizance, Cohen informed him that detectives from the 71st precinct were waiting to arrest him on gun possession charges which, plaintiff implies, were fabricated by Mckain-Cadet. Plaintiff was arrested and processed at the 71st precinct, then returned to defendant Kings County Central Booking. Plaintiff alleges that a "lieutenant officer" there "illegally strip[] searched, sexually assaulted and sodimized (sic)" him, and otherwise mistreated him. Id.

On June 25, 2004, plaintiff again appeared before Judge McGuire, who set bail and remanded defendant. Plaintiff alleges that, although his family posted bail at 5 p.m., personnel at Rikers Island "purposefully" delayed the processing of his paperwork. Id. at 7. As a result, plaintiff was not released until 5 o'clock the next morning. By that time, plaintiff's family had left and the Property Clerk's Office, which had plaintiff's identification, was closed.

Rather than wait three and one-half hours for the Property Clerk's Office to re-open, plaintiff left Rikers Island without his identification. Thereafter, while taking the subway "home," an officer from defendant 1st precinct demanded that plaintiff exit the train. Id. After plaintiff argued with the officer and proved unable to present any identification, plaintiff was arrested and charged with sleeping on the train.

Plaintiff was transported to the 1st precinct and then to Manhattan Central Booking, where he allegedly waited over 72 hours before being arraigned for a third time in less than one week. Plaintiff was represented by an unnamed LAS attorney, who was also representing a light-skinned Egyptian man. The LAS attorney succeeded in having the charges against the Egyptian man dismissed, but allegedly entered a guilty plea on plaintiff's behalf without plaintiff's consent.

3

As a result of his plea, plaintiff did not receive any jail time. He returned to work, where he allegedly learned that his wife had been calling him in violation of the order of protection he had obtained against her. Plaintiff went to the Public Safety Division to make a complaint against her, but was himself arrested by defendant Detective Pete McGrath and another detective from the 71st precinct upon allegations that plaintiff had himself violated an order of protection. Plaintiff alleges that McGrath "purposefully delayed processing his paperwork" and that, as a result, plaintiff waited over 72 hours for his arraignment.

Around August 27, 2004, plaintiff received a telephone call from a Detective Ulmer of the 75th precinct, who was investigating a complaint filed against plaintiff by his wife's brother. The brother, Kwame Mckain, alleged that plaintiff had called his house and threatened his family – allegations which plaintiff denies. However, the complaint does not indicate what, if anything, resulted from those charges. The complaint alleges that plaintiff's wife called the District Attorney's Office sometime in August 2004, and informed a Melissa Lee "that she wished to drop the charges." Id. at 10. It is not clear which charges Mckain-Cadet agreed to drop, or what happened in the other Criminal Court matters on which plaintiff was arraigned in June 2004.

The State Complaint

In 2005, plaintiff brought a pro se action in the Supreme Court of the State of New York, Kings County. Plaintiff's complaint refers to the case as "a tort action," id. at 10, and lists the specific torts allegedly committed by each defendant. For example, the complaint states that plaintiff is suing LAS for "conspiracy, mal practice (sic), mishandling of cases, and defamation." Id. In addition, the very detailed "Amended Affidavit of Fact" contained in the complaint alleges that Cohen "performed misrepresentation, conspiracy to frame." Id. at 5. However, the

4

complaint makes no reference whatsoever to any federal statute. Indeed, the only portions of plaintiff's submissions which even suggest a federal cause of action are the last paragraph of the complaint, which alleges a "Violation of civilian rights" by officers of the 71st precinct, id. at 10, and plaintiff's description of the nature of the case, which refers to a "violation of Civil Rights" by defendant New York City Police Department and Detective McGrath, and which describes the "[n]egligence of Person(s) sued" as having "violated [plaintiff]'s Civil Rights by not conducting (a) proper investigation(s) of alleged incident(s) brought against [plaintiff] and has breached their contract of duties to comply as appointed officials of the law, judicial system."[2]

LAS was served with plaintiff's summons and complaint on June 30, 2005. On July 19, 2005, counsel for LAS filed a notice of removal with this Court, alleging that this is "a civil action of which this Court has original jurisdiction under 28 U.S.C. § 1331 and is one which may be removed to this Court by defendant under ... 28 U.S.C. § 1441." Notice of Removal at 2. The Notice of Removal asserts that "[p]laintiff alleges violation of his federally-protected constitutional rights; and ... a conspiracy as and between the defendants which resulted in alleged violation of plaintiff's federally-protected constitutional rights," id., but does not cite to any specific portions of the complaint.

In the 30 days after LAS filed its Notice of Removal, only Kings County Criminal Court, Kings County Family Court, and Judges Silber and McGuire have indicated their consent to removal. See Letter from Assistant Attorney General Monica A. Connell, dated Aug. 11, 2005 (requesting that this Court entertain these defendants' motions to dismiss). During this period, this Court has received submissions suggesting that LAS is uncertain as to the nature of

---

[2] The description of the nature of the case and the characterization of the defendants' alleged negligence appear on unenumerated pages which apparently were appended to the summons. See Ammended Summons with Notice, May 14, 2005.

5

plaintiff's claims. For example, in a letter requesting permission to move to dismiss, counsel for LAS states, "[t]he Complaint <u>appears to allege</u> causes of action sounding in violation of civil rights, conspiracy, malpractice, defamation, discrimination, harassment, and other torts." Letter from Gregg D. Weinstock, dated July 26, 2005, at 1 (emphasis added).

This Court granted LAS permission to move to dismiss and has received a courtesy copy of LAS's motion. This motion, which characterizes plaintiff's complaint as "rambling [and] inartfully drafted," Memorandum of Law at 1, presumes that plaintiff intends to raise claims under 42 U.S.C. §§ 1983 and 1985, then asserts that plaintiff has failed to state a claim under these statutes. LAS argues that plaintiff has not set forth a viable cause of action for conspiracy under 42 U.S.C. § 1983 or 1985 because "[t]he Complaint makes no <u>specific</u> allegations with regard to the conspiracy of The Legal Aid Society and Gary Cohen, Esq. with the other defendants, even reading the Complaint in a favorable light for plaintiff." <u>Id.</u> at 4 (emphasis in original). LAS further argues that "[t]o the extent that the Complaint alleges civil rights violations" against LAS, plaintiff does not have a cause of action under § 1983 because LAS is not a state actor. <u>Id.</u> at 3.

This Court has also received an affidavit from plaintiff in opposition to LAS's motion and to removal of this case. Plaintiff alleges, <u>inter alia</u>, that LAS's Notice of Removal "fails to properly describe how this action falls under Eastern District Jurisdiction and merely quotes ... 28 U.S.C. § 1331." Plaintiff's Affidavit in Opposition at ¶ II.E. In addition, plaintiff accuses LAS of "misconstruing ... the commenced action." <u>Id.</u> at ¶ II.G.

<u>Discussion</u>

"Any action that was originally filed in state court may be removed by a defendant to

6

federal court only if the case originally could have been filed in federal court." Marcus v. AT&T Corp., 138 F.3d 46, 52 (2d Cir. 1998) (citing 28 U.S.C. § 1441(a); Hernandez v. Conriv Realty Assocs., 116 F.3d 35, 38 (2d Cir.1997)). In cases in which there is no diversity of citizenship between plaintiff and defendants, "federal-question jurisdiction is required" for removal. Caterpillar Inc. v. Williams, 482 U.S. 386, 392 (1987). Thus, in this case, in which plaintiff and defendants are all from New York, defendants must establish that this Court has federal-question jurisdiction pursuant 28 U.S.C. § 1331 in order to remove the action.

"The presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." Id. (citing Gully v. First National Bank, 299 U.S. 109, 112–13 (1936)). Under this rule, "[t]he existence of a federal question must be determined solely by reference to the plaintiff's own claim – not by reference to 'statements raised in anticipation or avoidance of possible defenses that may be interposed.'" Empire Healthchoice Assurance, Inc. v. McVeigh, 396 F.3d 136, 140 (2d Cir. 2005) (quoting Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc., 373 F.3d 296, 304 (2d Cir. 2004)). Application of this rule ensures that plaintiff remains "master of the claim," since plaintiff can avoid federal jurisdiction by relying exclusively on State law. Caterpillar, Inc., 482 U.S. at 392.

"Removal jurisdiction must be strictly construed, both because the federal courts are courts of limited jurisdiction and because removal of a case implicates significant federalism concerns." Smith v. Kinkead, No. 03 Civ. 10283 (RWS), 2004 WL 728542, at *1 (S.D.N.Y. Apr. 5, 2004) (quoting In re NASDAQ Market Makers Antitrust Litigation, 929 F.Supp. 174, 178 (S.D.N.Y. 1996)). The removal statute is also narrowly construed "in order to control the

7

federal docket." Glatzer v. Bear, Stearns & Co., 04 Civ. 8380 (GBD), 2005 WL 1571981, at *3 (S.D.N.Y. July 5, 2005) (quoting Winne v. Equitable Life Assurance Soc'y of U.S., 315 F.Supp.2d 404, 409 (S.D.N.Y. 2003)). "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c).

In this case, a federal question is neither presented on the face of plaintiff's complaint nor an essential element of plaintiff's causes of action. Plaintiff's complaint refers to this case as "a tort action," not a civil rights action, and lists torts allegedly committed by each defendant. Some of these torts – such as malpractice and defamation – are readily cognizable; others – such as "conspiracy to frame" and "violation of civilian rights" – are not. Courts and litigants are accustomed to reading a pro se plaintiff's pleadings liberally and interpreting them as raising the strongest argument they suggest. See McEachin v. McGuinnis, 357 F.3d 197, 200 (2d Cir. 2004) ("[W]hen the plaintiff proceeds pro se ... a court is obliged to construe his pleadings liberally"); Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994). In this context, however, the deference accorded pro se litigants requires that this Court take care to ensure that plaintiff remains "master of his claim" and to advance "the congressional purpose of giving deference to a plaintiff's choice of a state forum and of resolving doubts against removal in favor of remand." Miller v. First Security Investments, Inc., 30 F.Supp.2d 347, 350 (E.D.N.Y. 1998) (internal quotations and citations omitted). Plaintiff's pro se status does not give this Court or defendants license to interpret ambiguous claims in a manner calculated to undercut the plaintiff's choice of forum.

While there may be some uncertainty concerning the claims plaintiff is raising in this case, it is clear that plaintiff chose to bring this suit in State court. The complaint does not refer

8

to 42 U.S.C. § 1983 or 1985 or any other federal statute. The only explicit reference to 42 U.S.C. § 1983 or 1985 or other federal statutes in this action thus far appears in LAS's own submissions, which plaintiff has characterized as "misconstruing ... the commenced action." Plaintiff's Affirmation in Opposition at ¶ II.G. LAS itself concedes that "[t]he Complaint makes no specific allegations with regard to the conspiracy" mentioned therein. Memorandum of Law at 4. Moreover, LAS admits uncertainty concerning whether plaintiff is advancing a § 1983 claim, prefacing their discussion of plaintiff's § 1983 claim with the phrase, "[t]o the extent that the Complaint alleges civil rights violations against [LAS]." Id. at 3.

Plaintiff's complaint does not allege civil rights violations by LAS, but raises against that defendant only claims of "conspiracy, mal practice [sic], mishandling of cases, and defamation." Complaint at 10. The only charges made in the complaint against any defendant that suggest an allegation of civil rights violations are a charge against the 71st Precinct for "[v]iolation of civilian rights" and a charge against the 61st Precinct for "unlawfully detaining a civilian against his rights." Only the unenumerated pages attached to the Amended Summons with Notice make any mention of "civil rights," and there only when characterizing "the nature of the action" against the NYPD and Detective Pete McGrath and in a broad description of the "Negligence of Person(s) Sued." These mentions, inconsistent with the charges stated in the complaint, are insufficient to raise a federal question sufficient for defendant LAS to remove the action to federal court, especially when only four of the at least 15 other defendants have even implicitly consented to removal.

District courts in this Circuit have generally required that all defendants join or consent to the petition for removal. See, e.g., Ell v. S.E.T. Landscape Design, Inc., 34 F.Supp.2d 188,

9

193 (S.D.N.Y. 1999) (citing cases and noting "widespread agreement" to this "rule of unanimity" among district courts in this Circuit); Miller, 30 F.Supp.2d at 350 (noting wide support for rule of unanimity). The fact that most of the other defendants have not yet joined or consented to the petition for removal militates strongly in favor of remand.

Conclusion

For the reasons stated above, this Court lacks federal-question jurisdiction over this case. Accordingly, this action cannot be removed to this Court and is hereby remanded to the Supreme Court of the State of New York, Kings County, pursuant to 28 U.S.C. § 1447(c). In addition, the Order of this Court dated August 25, 2005 granting defendants the Kings County Family Court, Kings County Criminal Court, the Honorable William McGuire, Judge of the Criminal Court of the City of New York, and the Honorable Debra Silber, Judge of the Civil Court of the City of New York permission to move to dismiss the action as against them is therefore withdrawn. The Clerk of Court is directed to mark all pending motions denied as moot and to close this case.

SO ORDERED.

CAROL B. AMON
United States District Judge

Dated: Brooklyn, New York
August 29, 2005